IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JASON WHITFIELD, R49366,   )
             )
     **Plaintiff,**  )
             )
vs.           )
             )
WEXFORD HEALTH SOURCES, INC., )
MOHAMMED SIDDIQUI,   )
MARY JO ZIMMER,    )  **Case No. 22-cv-1528-DWD**
ALISA DEARMOND,    )
ANTHONY WILLS,     )
ANGELA CRAIN,     )
MICHAEL MOLDENHAUER,  )
MARTIN,       )
             )
     **Defendants.** )

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Jason Whitfield, brings this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights while at Menard Correctional Center (Menard). Plaintiff alleges that the Defendants violated his rights by failing to provide adequate care for an ACL injury he sustained in March of 2022. Defendants have filed two Motions for Summary Judgment (Docs. 43, 48) on the exhaustion of administrative remedies, Plaintiff has responded (Doc. 53), and the Wexford Defendants replied (Doc. 54). For reasons explained herein, the Motions will be denied on paper and this matter will be scheduled for an evidentiary hearing.

## BACKGROUND

Plaintiff signed his original complaint on July 14, 2022, (Doc. 1), and his amended complaint on February 7, 2023.  (Doc. 12 at 23).    Upon initial review of the amended pleading, Plaintiff was allowed to proceed on the following claims:

Claim 2:        Eighth  Amendment  deliberate  indifference  against Defendants Dearmond, Zimmer, and Moldenhauer for their delays or denial or persistence with a course of care that did not adequately address Plaintiff's ACL injury;

Claim 3:        Eighth  Amendment  deliberate  indifference  claim  against Defendants Dr. Siddiqui, Angela Crain, and Martin[1] for their involvement in the course of care for Plaintiff's ACL injury;

Claim 5:        *Monell* claim against Wexford for maintaining policies or practices — specifically understaffing, collegial review, nurse sick  call  requirements,  and  pain  medication  policies — that limited Plaintiff's access to care for his ACL injury.

(Doc. 15 at 5-6).

There are two primary groups of defendants — those employed by Wexford Health Sources, Inc. (Zimmer, Moldenhauer, Dearmond, Siddiqui) and those employed by the Illinois Department of Corrections (Crain).  The Wexford Defendants contend that there is no properly filed and fully processed grievance that exhausts the claims against them, though they acknowledge that the Administrative Review Board (ARB) received two grievances that mention their conduct outside the bounds of the ordinary grievance process.  (Doc. 44).  They also contend that two officially documented grievances received

---

[1] On September 15, 2023, the Court noted that Defendant Martin had not been served and a waiver was returned unexecuted with the notation that Martin was deceased. (Docket entry 27).  Plaintiff was given 90 days to file a motion to substitute a party for Martin, failing which she would be dismissed from this action.  Plaintiff has not filed anything further concerning Martin, so Claim 3 against Martin is now dismissed with prejudice.

at the prison level were not sufficient to exhaust his claims, one because it did not mention them and the other because it was filed *after* the amended complaint in this case.  (*Id.*). Defendant Crain contends that official prison records contain no grievance that mentions her involvement, and even the grievances Plaintiff submitted with his complaint and to the ARB directly did not mention her and could not exhaust a claim against her.  (Doc. 49).  She also contends her alleged conduct identified in the complaint post-dates any of the possible relevant grievances and thus those grievances could not have exhausted claims against her.  (*Id.*).  Plaintiff counters that the grievance process was unavailable to him because he submitted multiple grievances at the prison that went missing or were never answered.  (Doc. 53).

## FINDINGS OF FACT

On June 21, 2021, the ARB received two grievances directly from Plaintiff, both dated May 16, 2021.  (Doc. 12 at 44-47).  Plaintiff wrote:

> This is the 2nd grievance I wrote concerning this issue. I sent a grievance 4-8-21 which mysteriously vanished I didn't even get a receipt back after I personally put the grievance in the box myself!  On 3-4-2021 I tore my ACL in my right knee.  On 3-5-2021 I went to sick call where I was scheduled to see the Dr..  On 3-10-2021 I was seen by Dr. Zimmer who thoroughly examined my knee by putting it through a range of motions and concluded that my ACL and possibly my LCL in my right knee is torn.  She gave me a 30 day medical permit she also put me in for an x-ray which we both agreed I need a MRI done because a x-ray won't show a torn ACL only a MRI will but they x-ray is protocol.  On 3-15-2021 I had a x-ray done I explained to the nurse my 2020 medical journal says a x-ray will only reveal broken bones a MRI will show torn ligaments and tendons in my knee/ACL.  On 3-29-2021 I received a x-ray summary stating "the following checked results were found to be normal or stable" signed by Ms. Dearmond & Ms. Zimmer the odd thing is the nurses told me Ms. Zimmer resigned on 3-14-2021 so someone forged her name on my x-ray summary signed 3-26-2021.  I watched her sign my medical permit that's not her signature on this x-ray

summary.  I've put in multiple sick call passes and I haven't been seen my knee/ACL injury is being neglected after it was properly diagnosed by Zimmer.  Permanent damage can potentially be done to my knee because its being ignored when I need a MRI done something is wrong with my knee I feel the pain and awkwardness every day.  I can't move how I used to this type of injury requires a MRI & surgery.  It's been almost 2 months since I been complaining about this."

(Doc. 12 at 46-47).

In the second grievance, Plaintiff wrote:

This grievant is appealing the decision by Dr. Ritz of Wexford under 20 Ill. Admin. Code 504 Subpart F.  Instead of giving me a MRI for a torn ACL an alternative has been made to do physical therapy: this is irresponsible decision for the foregoing reasons.  1. My ACL was torn on 3-4-2021. 2. On 3-10-2021 M.D. Ms. Zimmer examined my knee and diagnosed it as a torn ACL/LCL.  3. After a frivolous x-ray on 3-15-2021 the issue was pushed off after complaining for 2 months I was seen.  4. On 4-26-2021 I was re-examined by MD Moldenhauer who stated Dr. Zimmer was right I am referring you to a specialist to have a MRI done.  5. On 5-13-2021 I received a referral denial of my MRI which 2 MDs agreed on.  6. My case was poorly presented by Dr. Siddiqui who I've never seen or been examined by concerning this issue in his poor representation he reported to Dr. Ritz Wexford that a MRI for my left knee which is the wrong knee it has always been my right knee.  This issue is being neglected and I am being refused adequate healthcare.  7. They are forcing me into physical therapy for a injury they refuse to properly diagnose which can cause permanent damage if you are refusing to acknowledge a injury supported by 2 medical directors how are you blindly willing to refer physical therapy what form of medical malpractice is that this is a surgery required injury this previous protocol seems wrong all I'm asking for is a MRI a proper diagnosis before anything else is considered or done.  It's been 2 months and 13 days since the initial injury.  8. Why try physical therapy when you don't know the extent of the injury risking further injury and permanent damage.  I'm currently walking with a limp.

(Doc. 12 at 44-45).

The ARB returned both grievances on June 28, 2021, with a notation that Plaintiff had failed to submit his original grievance or counselor's response, as well as the

responses from the grievance officer and Chief Administrative Officer (CAO).  (Doc. 12 at 40).

Plaintiff contends in his signed response to the summary judgment motions that in addition to these two grievances, he had also attempted to submit others in March and April of 2021, as well as in December of 2021 and January and April of 2022.  (Doc. 53 at 9-10).  He claims that he got no response to these grievances, which is why he could neither appeal nor supply copies of these grievances for litigation purposes.  (*Id.* at 10).

In addition to these grievances, on August 17, 2021, Plaintiff submitted a grievance (265-8-21)[2] inquiring about when his alternative course of physical therapy would begin. (Doc. 12 at 51).  In the grievance he wrote:

> In the beginning of March of 2021 I tore my ACL in my right knee.  Since I've been denied a MRI amongst other things 2 months ago I was told by the MD I would start immediate physical therapy.  2 months later I haven't been seen for 1 session.  My previous 2 grievances on this issue came up missing.  I hope this one don't I gave multiple nurses request slips for sick call in 30 days I haven't been seen once.

(Doc. 12 at 51).  On October 27, 2021, Plaintiff's counselor directed him to a responsive memorandum from Kimberly Martin who indicated he was evaluated by the physical therapist on September 2, 2021, and started physical therapy on September 13, 2021.  (Doc. 1 at 52).  There is no evidence that this grievance was appealed to the grievance office or the ARB.

---

[2] Neither the Wexford nor the IDOC defendants tendered a copy of this grievance with their motions.  The Wexford Defendants indicate that the records department at Menard could not locate the grievance.  (Doc. 44 at 5, n. 1).  The IDOC Defendant acknowledges the existence of this grievance in a grievance log, and they cite to the copy Plaintiff tendered with his amended complaint.  (Doc. 49 at 3, ¶ 7; Doc. 49-3 at 2).

The defendants also both identify a grievance received by the ARB on January 13, 2022, but penned by Plaintiff in November of 2021. (Doc. 49-5 at 8-10). In that grievance Plaintiff primarily discussed an issue with tactical team during a shakedown, but he mentioned his knee injury in so much as to say that his knee played a factor in his interaction with the tactical team.

Finally, the Wexford defendants identify an October 18, 2022, grievance (222-10-22) that allegedly relates to Plaintiff's "medical diagnosis." As with grievance 265-8-21, they indicate that this grievance was not contained in the institutional files from the prison or the ARB. (Doc. 44 at 5, n. 2). The IDOC Defendant does not acknowledge this grievance in the written brief or statement of facts, though it is recorded in the grievance log that was attached as an exhibit to their motion. (Doc. 49-3 at 5-8).

**CONCLUSIONS OF LAW**

A. Legal Standards

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving part." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Prison Litigation Reform Act (PLRA) provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008). "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). For a prisoner

to properly exhaust his administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024. However, "if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting," then the grievance procedure becomes unavailable. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (finding that an inmate who placed a timely ARB appeal in his chuckhole for mailing, but whose grievance was apparently lost, did all that he could to follow exhaustion procedures).

As an inmate in the Illinois Department of Corrections (IDOC), Plaintiff must follow the grievance process outlined in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, et seq. (2017). Under IDOC's procedure, an inmate initiates a grievance with his counselor, and he may then submit his grievance to a grievance officer at his facility, and to the CAO at his facility. If an inmate is unsatisfied with the outcome at the facility he must appeal to the ARB within 30 days. 20 ILL. ADMIN. CODE § 504.850(a).

B. Analysis

The Wexford defendants[3] contend that because the grievances Plaintiff sent directly to the ARB in May of 2021 were not properly exhausted at all steps of the process,

---

[3] The Wexford defendants argue in their Reply (Doc. 54) that Plaintiff's response did not contain a properly formatted statement of facts, nor does it contain a response to their statement, so they ask for their facts to be treated as admitted. Although the Federal Rules of Civil Procedure allow for this sort of ruling, the Court will not apply such a strict standard to an incarcerated pro se litigant, particularly where the evidence he previously submitted with his complaint and his response create genuine disputes of fact.

the grievances cannot serve to exhaust claims against them.  Plaintiff counters that he only submitted the grievances directly to the ARB after the prison utterly failed to respond to multiple grievances at the prison level.  He explains that he did this because the grievance process at Menard offers no alternative or no option for an inmate whose grievance comes up missing.  Plaintiff's position is supported by his statements about his course of action made in his signed response to the defendants' summary judgment motion.  At the summary judgment phase on exhaustion, an inmate's signed pleading may be treated as an affidavit, and clear and specific statements within the affidavit may be interpreted as evidence in support of the plaintiff's position.  *See e.g.*, *Lynch v. Corizon*, 764 Fed. App'x 552 (7th Cir. 2019); *Gil v. Wilson*, 2012 WL 6509074 at * 1 (N.D. Ind. Dec. 11, 2012) (if party with personal knowledge makes specific factual assertions in a pleading and verifies those under the penalty of perjury, the factual assertions may be considered as evidence just as if contained in an affidavit).

Here, Plaintiff's statements about the grievances he attempted to file at Menard that either garnered no response or got lost are sufficient to create a genuine dispute.  The Court must hold a *Pavey* evidentiary hearing to further assess the evidence concerning the two May 2021 grievances transmitted to the ARB.  If it ultimately finds that Plaintiff attempted to submit these grievances at the prison but got no response, then the grievances are sufficient to exhaust his claims against Defendants Wexford, Dr. Siddiqui, Dr. Zimmer, Dearmond, and Moldenhauer.  Each of these individuals was mentioned by name in the grievances, and it is clear Plaintiff was complaining of the role they played in his access to care.

As for the August 2021 grievance about physical therapy (265-8-21), this grievance did not mention any of the Wexford defendants by name, and it complained of a slow start to physical therapy, but a delay in receiving physical therapy was not discussed in the complaint[4] and is not clearly attributed to any of the individual Wexford defendants. Thus, grievance 265-8-21 would not have been sufficient to exhaust the operative claims, even if it was submitted at all levels of review.[5] The alleged November 2021 grievance received by the ARB in January of 2022 was also insufficient for exhaustion because it mentioned Plaintiff's knee injury in the context of a security shakedown but did not mention the medical providers overall ongoing treatment of the issue. (Doc. 12 at 37-38).

Turning to the grievance that is contained in the Menard grievance log but is not contained anywhere else in the record (222-10-22), this grievance is insufficient for exhaustion because it was filed in October of 2022—months after the original complaint in this lawsuit was filed in July of 2022. Under controlling Seventh Circuit precedent, a sue first, exhaust later approach is not acceptable. *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020). In *Chambers*, the Seventh Circuit explicitly held that an inmate cannot cure a failure to exhaust by exhausting during the litigation and then filing an amended

---

[4] Plaintiff did explicitly mention grievance 265-8-21 in the complaint, alleging that in the grievance he complained "about how he still had not received an MRI yet," despite one initially having been order on April 26, 2021. (Doc. 12 at 18). In reality, the demand for relief in the text of this grievance is "why hasn't my physical therapy started?" (Doc. 12 at 51).

[5] Defendants argue that the grievance was not properly exhausted because Plaintiff did not submit it to the grievance officer, CAO or ARB, but a closer look at the grievance and the substance of the response suggests that no further submission would have made sense. Plaintiff inquired in the grievance about when he would begin physical therapy, and by the time he got a grievance response, physical therapy had begun. At that point, there was no aspect of the grievance for him to appeal to a higher level. Inmates are not required to appeal further if they receive a favorable termination to the grievance. *See e.g., Gaines v. Berns*, 2022 WL 874660 at *7 (N.D. Ill. March 24, 2022) (collecting cases on the proposition that an inmate need not appeal a grievance if he received the care he sought in the interim).

complaint containing the same claims. *But see Ramirez v. Collier*, 595 U.S. 411, 423 (2022) (suggesting but not deciding that an amended complaint may cure an exhaustion defect because an amended complaint supersedes the original, the latter being treated thereafter as non-existent). Therefore, regardless of the possible substantive contents of this grievance, it cannot satisfy the exhaustion requirement for the claims against the Wexford defendants.

Turning to Defendant Crain, none of the grievances discussed in detail above or quoted in the fact section above are sufficient to exhaust the claim against Crain. Plaintiff alleges that he wrote letters to Crain about inadequate care in December of 2021 (Doc. 12 at 19, 32-33), thus any grievance sufficient to exhaust said claim would need to have been filed and exhausted between December of 2021 and the filing of this lawsuit in July of 2022. Crain argues that the record contains no concrete evidence of any such grievance. In support of her position, she cites the Menard internal grievance log. (Doc. 49-3). Unlike the Wexford defendants, Crain does not acknowledge the October 2022 grievance noted in Menard's internal log that allegedly concerned a "medical diagnosis." The substantive contents of this grievance might matter if Plaintiff had filed it before he initiated this lawsuit, but as the Court already concluded above, because it was filed *after* the lawsuit, it came too late and is not sufficient under controlling Seventh Circuit precedent to exhaust the claim against Crain.

Contrary to the evidence presented by Crain, Plaintiff argues in his response that he submitted grievances in December 2021, January 2022, and April of 2022 that went missing. (Doc. 53 at 10). Unlike some of the other grievances which he had hand copied

for transmission to the ARB, he indicates he has no copy of these grievances. At this juncture, Plaintiff's sworn assertion that he filed grievances in December 2021, January 2022 and April of 2022, is sufficient to create a material dispute about his exhaustion concerning Crain. A hearing[6] must be held to determine if Plaintiff did in fact submit any grievance relevant to Crain in December 2021, January of 2022 or April of 2022.

### DISPOSITION

Defendants' Motions for Summary Judgment on the issue of exhaustion (Docs. 43, 48) are **DENIED**. The Wexford Defendants have already expressed a desire to proceed to an evidentiary hearing in their reply brief (Doc. 54), so this matter will be scheduled for an evidentiary hearing to address the material disputes identified above. If any defendant does *NOT* want to participate in a hearing and would prefer to withdraw the affirmative defense of failure to exhaust administrative remedies, they may do so by filing an appropriate motion within 14 days of this Order.

As explained in footnote 1, Defendant Martin is now dismissed with prejudice and the Clerk of Court is **DIRECTED** to **TERMINATE** Martin.

**IT IS SO ORDERED.**

Dated: July 15, 2024                    /s *David W. Dugan*

_____
DAVID W. DUGAN
United States District Judge

---

[6] Plaintiff contended in his response that material disputes of fact should be resolved by a jury, but at the exhaustion of administrative remedies phase, the Seventh Circuit has established that a judge may resolve factual disputes without a jury. *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008) (holding that a judge, not a jury, should resolve factual issues at the exhaustion phase.