IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JASON WHITFIELD, R49366, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| WEXFORD HEALTH SOURCES, INC., | ) |
| MOHAMMED SIDDIQUI, | )  Case No. 22-cv-1528-DWD |
| MARY JO ZIMMER, | ) |
| ALISA DEARMOND, | ) |
| ANTHONY WILLS, | ) |
| ANGELA CRAIN, | ) |
| MICHAEL MOLDENHAUER, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

This matter is before the Court on Defendants' ("Defendants") affirmative defense that Plaintiff Jason Whitfield failed to exhaust his administrative remedies prior to filing this lawsuit as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). After denying the Defendants' written motions for summary judgment on the issue of exhaustion (Doc. 56), the Court held a *Pavey* hearing on August 13, 2024, to make findings about exhaustion in this case. *See Pavey v. Conley*, 663 F.3d 899, 904 (7th Cir. 2011); *Pavey v. Conley,* 544 F.3d 739, 742 (7th Cir. 2008). After hearing from the parties and reviewing the evidence on exhaustion, the Court finds that the Plaintiff failed to exhaust his administrative remedies against all defendants so this matter must be dismissed without prejudice.

BACKGROUND

Plaintiff signed his complaint on July 4, 2022, and signed his Amended Complaint on February 7, 2023. (Doc. 1 at 21; Doc. 12 at 23) Upon initial review of the Amended Complaint, the Court allowed three claims to proceed. (Doc. 15 at 13). The parties then conducted discovery on the exhaustion of administrative remedies, and the Defendants filed motions for summary judgment on this issue. (Docs. 43, 48). Plaintiff responded (Doc. 53), and the Court found there remained genuine disputes of fact, so it denied the motions and set the matter for a hearing. At the time of the *Pavey* hearing the following claims and parties remained:

| | |
|---|---|
| Claim 2: | Eighth Amendment deliberate indifference against Defendants Dearmond, Zimmer, and Moldenhauer for their delays or denial or persistence with a course of care that did not adequately address Plaintiff's ACL injury; |
| Claim 3: | Eighth Amendment deliberate indifference claim against Defendants Dr. Siddiqui and Angela Crain for their involvement in the course of care for Plaintiff's ACL injury; |
| Claim 5: | *Monell* claim against Wexford for maintaining policies or practices—specifically understaffing, collegial review, nurse sick call requirements, and pain medication policies—that limited Plaintiff's access to care for his ACL injury. |

(Doc. 15 at 5-6).

For purposes of the *Pavey* hearing, the Court determined that there was a genuine dispute of fact because the Defendants claimed there was no documentary evidence of Plaintiff properly submitting and exhausting any relevant grievances, but Plaintiff countered those assertions with his own sworn statements and exhibits. (Doc. 56).

Specifically, Plaintiff claimed that he repeatedly submitted relevant grievances but that they turned up lost or missing.

## FINDINGS OF FACT

At the evidentiary hearing, the Defendants called Plaintiff and called Kelly Pierce, a grievance officer. Ms. Pierce testified that she has been employed as a grievance officer at Menard since June of 2016. In her role as a grievance officer, she regularly receives, processes, and reviews grievances from inmates. Grievances must be submitted at three levels for review. First, a grievance must be placed in a portable box or a locked box on the wall. The contents of the boxes are processed in the grievance office. Each grievance is reviewed and logged. It is noted in the inmate's counseling summary and the prison's internal grievance log, and the inmate is to receive a "CHAMP" note made by the grievance officer, which serves as his receipt for filing a grievance. The first level of review is done by a counselor, the second level is done by the grievance officer and chief administrative officer, and the third level grievances are reviewed by the Administrative Review Board (ARB).

In 2017 and 2018, Menard established a procedure for inmates to inquire about grievances. If an inmate does not receive a receipt, he may write to his counselor to ask for an update. Queries like this are also recorded in the counseling log, and the counselor will respond to the inmate.

Relevant to this specific case, Pierce reviewed the internal grievance log maintained at Menard by the grievance office. (Doc. 49-3). She testified that the log did not reflect the receipt of any grievances from Plaintiff in December of 2021, January of

2022, or April of 2022. Because Pierce testified about the counseling summary and CHAMP notes, the Court also directed that the counseling summary be submitted.

Plaintiff was called as the Defendants' first witness, and he also testified on his own behalf very briefly. Plaintiff's testimony in both instances was consistent. He testified that at the time of the events in this case, he was housed in a place where portable grievance boxes *should* have been circulated to the inmates each night. However, he claims the boxes were not circulated, which left him to place outgoing grievances in his cell bars alongside his outgoing mail. He also testified that there were grievance boxes affixed at various locations in the cellhouse, which could be used if an inmate was out of cell for some kind of movement. Plaintiff indicated that he placed grievances in the boxes on the walls at least a few times. For example, he testified that he placed his March 2021 grievance in a such a box but got no response.

His general understanding of the grievance process was that there were three levels: 1) counselor review; 2) grievance office review; and 3) review in Springfield. He learned this from the orientation manual and his lengthy incarceration. He believed that when a grievance was filed, an inmate should get a receipt with a grievance number. Plaintiff testified that he attempted to submit grievances about the issues in this case in March, April and December of 2021, and in January and April of 2022, but he did not get responses to any of these grievances. He testified that the contents of each grievance was roughly the same and concerned his desire for an MRI and the ineffectiveness of physical therapy. He mentioned Defendants Siddiqui, Zimmer, Dearmond and Moldenhauer in relation to these missing grievances, but did not specifically mention Crain. Plaintiff

testified that when his grievances came up missing, he wrote his counselors about the issue. He had a variety of housing locations, and so he wrote both to counselors Quick and Weaver. Plaintiff's contention that he wrote Quick and Weaver is consistent with documents he appended to his Amended Complaint, which were alleged April 2021 letters to Quick and an April 2022 letter to Weaver about his grievances. In the letters he wrote that he put grievances in the box himself. (Doc. 12 at 25-27).

Plaintiff testified that he tried to get copies of his grievances but was informed by the law librarian that he could not get copies unless the grievance had proper responses from the prison level. Plaintiff also testified that during his 20 years of incarceration, he has never experienced a grievance processing problem like this. Given the irregularity of the problem, he also tried to write to other prison officials like Defendant Crain and the Warden.

The Defendants submitted Plaintiff's counseling summary (Doc. 61), which does not show any inquiries from Plaintiff about grievances submitted in March, April or December of 2021, nor does it show inquiries about grievances submitted in January or April of 2022. (Doc. 61-1 at 3-5). Although the counseling summary contains only brief notes, it is significant in that it documents multiple face-to-face encounters between Plaintiff and counselor Weaver where Plaintiff reported "no issues." For example on October 7, 2021, and November 30, 2021, Weaver recorded "no issues." (Doc. 61-1 at 4). Weaver again noted he saw Plaintiff on tour on March 15, 2022, and April 14, 2022, with no issues recorded. (Doc. 61-1 at 3). There were also two face-to-face tours with counselor Quick in March and April of 2021 with no recorded issues. (*Id.* at 5).

CONCLUSIONS OF LAW

A. **Legal Standards**

The Prison Litigation Reform Act (PLRA) provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008). "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). "At *Pavey* hearings, judges may hear evidence, find facts, and determine credibility. After finding facts, the district court may allow a claim to proceed or dismiss it for failure to exhaust." *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018) (internal citations omitted).

For a prisoner to properly exhaust his administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024. As an inmate in the Illinois Department of Corrections (IDOC), Plaintiff must follow the grievance process outlined in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, et seq. (2017). Under IDOC's procedure, an inmate initiates a grievance with his counselor, and he may then submit his grievance to a grievance officer at his facility, and to the CAO at his facility. If an inmate is unsatisfied with the outcome at the facility he must appeal to the ARB within 30 days. 20 ILL. ADMIN. CODE § 504.850(a). However, "if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from

exhausting," then the grievance procedure becomes unavailable. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (finding that an inmate who placed a timely ARB appeal in his chuckhole for mailing, but whose grievance was apparently lost, did all that he could to follow exhaustion procedures).

Whether a claim has been exhausted pursuant to § 1997e(a) is a determination for a judge—not a jury—to make. *Pavey v. Conley*, 544 F.3d 739, 741-42 (7th Cir. 2008). If a *Pavey* hearing is held due to an issue of fact about exhaustion of administrative remedies, the court hears evidence, finds facts, and determines credibility. *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018). The burden of proof is on the defendants to demonstrate that the prisoner failed to exhaust available administrative remedies. *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013). Generally, a defendant will need to do more to carry the burden than plainly allege that no grievance exists, a defendant might meet said burden by submitting additional evidence such as grievance logs, counseling summaries, or evidence about the routine function of the grievance procedure. *See e.g., Daniels v. Prentice*, 741 Fed. App'x 342, 343-44 (7th Cir. 2018) (not published in the Federal Reporter) (finding that a defendant met her burden to show a lack of exhaustion by submitting records of an inmate's grievance activity, the inmate's counseling record, and affidavits on the prison grievance procedure to contradict the plaintiff's own testimony about grievances that allegedly went missing).

B. Analysis

The Court held a *Pavey* hearing in this matter to find facts and to review the credibility of the witnesses. The Defendants carried their burden of establishing that the

grievance procedure was accessible to Plaintiff, and that it functioned in a routine fashion. Ms. Pierce credibly testified that inmates could place grievances in fixed or portable boxes, that the grievances would be processed by the grievance office, and that inmates would receive CHAMP receipts. If there was a problem accessing a grievance box, an inmate could write his counselor. If an inmate felt a grievance was missing after submission to a box, he could write to his counselor to ask about it, he would receive a response, and a note would be made in his counseling summary. Ms. Pierce's credible testimony about the reliable nature of the grievance process at Menard during the relevant time is bolstered by the grievance records that were previously submitted (Doc. 49-3), as well as by the submission of the counseling summary (Doc. 61-1). This evidence all credibly demonstrates that the grievance process was available, and that there was a fail-safe mechanism for grievances that an inmate thought may be lost.

      Plaintiff's own testimony about his knowledge of the grievance process and his understanding of the three levels of review aligned with Ms. Pierce's and demonstrated that he clearly understood how to submit grievances at Menard. Although he claims that the portable grievance box was not regularly circulated, forcing him to deposit grievances in his cell bars[1], he also testified that on a few occasions he placed grievances directly in the fixed box. Additionally, although he claimed that the offender orientation manual did not tell him what to do if he believed a grievance was lost, his own testimony was that he wrote to his counselors to ask about alleged lost grievances when he did not

---

[1] Plaintiff's testimony about the grievance boxes not being circulated is different from what he said in his alleged letters to Quick and Weaver, where he indicated he had placed grievances in the boxes himself. (Doc. 12 at 25-27).

receive receipts. This suggests that he understood how to proceed in the event of a lost grievance, because this is the exact procedure that Pierce described for a potential lost grievance.

Plaintiff testified that when his efforts proved fruitless, he then submitted a grievance in June of 2021 directly to the ARB to try to cover his bases. He claims that he did this because he had never experienced such problems with the grievance process during his 20 years of incarceration. Although this contention was supported by documentation at the summary judgment phase, and again by Plaintiff's testimony, the Court does not ultimately believe that the grievance Plaintiff submitted directly to the ARB was something Plaintiff had tried to properly submit at Menard for months to no avail.

If the Court credited Plaintiff's testimony, it would have to believe not only that one grievance got lost, but that as many as five grievances got lost over the span of a year. It would also have to believe that he submitted at least three queries to his counselors about the grievances, but that all these queries were lost, and that none of this activity was documented in his grievance log whatsoever. The Court is simply not persuaded that all these documents went missing, and that zero paper-trail remains at Menard, aside from Plaintiff's own documentation. The counseling summary contains no mention of Plaintiff's attempted grievances or his follow-up written correspondence to counselors Weaver and Quick. It also reflects face-to-face interactions with Quick and Weaver during the relevant time where no issues were reported. In the end, the Court does not find Plaintiff's testimony credible. Accordingly, the Court credits the Defendants'

evidence and Ms. Pierce's testimony over Plaintiff's own, and it finds that he has failed to exhaust his administrative remedies as to all defendants for all three claims.

It is worth noting, even if the Court believed that Plaintiff had done everything he could to submit and exhaust grievances between March of 2021 and April of 2022, he did not describe any of these grievances as discussing Defendant Crain's involvement. As such, he entirely failed to exhaust claims against Crain, regardless of the evidence concerning the other defendants (Siddiqui, Dearmond, Zimmer, Moldenhauer, Wexford).

## DISPOSITION

Defendants have credibly established that Plaintiff failed to exhaust his administrative remedies. Claims 1-3 are now **DISMISSED without prejudice** for Plaintiff's failure to exhaust administrative remedies as is required by 42 U.S.C. § 1997e(a). The Clerk of Court is **DIRECTED** to enter judgment accordingly and to **CLOSE** this case.

**IT IS SO ORDERED.**

Dated: August 19, 2024

_____
DAVID W. DUGAN
United States District Judge

## NOTICE

If Plaintiff wishes to contest this Order, he can either file a motion under Federal Rules of Civil Procedure 59(e) or 60(b), or he can appeal to the Seventh Circuit Court of Appeals within 30 days of the judgment or order appealed from, FED. R. APP. P. 4(a)(1)(A).

The grounds under Rules 59(e) and 60(b) are quite narrow. For example, newly discovered evidence that was not previously available is a basis for relief under either rule, as is a manifest error of law. These rules are not intended as a forum to rehash previously considered arguments. If Plaintiff chooses to appeal to the Seventh Circuit Court of Appeals, he must file a notice of appeal in this Court, and he must pay a filing fee of $505, or apply for in forma pauperis (IFP) status. FED. R. APP. P. 3(a), 3(e). An IFP application must be accompanied by a prison trust fund account statement, as well as an outline of the issues to be presented on appeal. FED. R. APP. P. 24(a)(1)(C). If IFP status is granted, Plaintiff will be assessed a partial filing fee, with the balance due and owing over time regardless of the outcome of his appeal.